UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



F I L E D
APR 0 7 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 634 |
| v. ) | Violations: Title 18, United States |
| ) | Code, Sections 241 and 1958; |
| JEROME A. FINNIGAN and ) | Title 26, United States Code, |
| KEITH A. HERRERA ) | Section 7206(1) |
| ) | |

JUDGE MANNING
MAGISTRATE JUDGE COLE

### COUNT ONE

The UNITED STATES ATTORNEY charges

1. At times material to this information:

   (a) Defendants JEROME A. FINNIGAN and KEITH A. HERRERA were employed as Police Officers by the Chicago Police Department and assigned to the Special Operations Section, an elite city-wide unit; and

   (b) As Chicago Police Officers, defendants JEROME A. FINNIGAN and KEITH A. HERRERA were responsible for, among other things, enforcing the laws of the State of Illinois and the ordinances of the City of Chicago; investigating crimes committed in the City of Chicago; making lawful arrests; conducting lawful searches; collecting, preserving, and inventorying evidence; making truthful and accurate reports of their official activities; and testifying truthfully concerning their official activities.

2. From in or about 2003 until in or about 2006, at Chicago in the Northern District of Illinois, Eastern Division,

JEROME A. FINNIGAN and
KEITH A. HERRERA,

defendants herein, together with other Chicago Police Officers assigned to the Special Operations Section, while acting under color of the laws of the State of Illinois and City of Chicago, did willfully conspire and agree with each other to injure, oppress, threaten and intimidate persons in the State of Illinois, namely certain persons in Chicago, in free exercise and enjoyment of a right and privilege secured by the Constitution and the laws of the United States, that is, the rights to be free from the deprivation of liberty and property without due process of law by one acting under color of law.

3. It was part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers assigned to the Special Operations Section, used and agreed to use their position and authority as Chicago Police Officers to unlawfully stop and detain persons, to unlawfully search persons and residences, to deprive persons of money without due process of law and to cause persons to be charged based upon false evidence.

4. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA and other Chicago Police Officers assigned to the Special Operations Section routinely and regularly performed unlawful arrests and unlawful searches for the purpose of conducting criminal investigations, and, when the opportunity arose, unlawfully took money for their own benefit from the arrestees and the places being searched, including the persons and places described below.

## PERSONS A and B

5.     It was further part of the conspiracy that, on or about February 14, 2004, defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, caused Person A, whom they had arrested distributing 2 kilograms of cocaine to Person B, to disclose that a large quantity of cocaine was located in a garage on South Campbell Avenue in Chicago, and then defendant FINNIGAN and other Chicago Police Officers entered the garage and seized approximately 33 kilograms of cocaine.

6.     It was further part of the conspiracy that defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, caused Person A to disclose that money was located in Person A's residence on South Kostner Avenue in Chicago, and then defendant FINNIGAN and other Chicago Police Officers searched Person A's residence and took approximately $30,000 to $35,000 in United States currency.

7.     It was further part of the conspiracy that defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the 35 kilograms of cocaine taken from Person A and the garage on South Campbell and only $10,000 of the money taken from Person A's residence, and caused Persons A and B to be charged based upon police reports which falsely represented that only $10,000 was taken from Person A's residence.

8.     It was further part of the conspiracy that defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, divided among themselves the approximately

$20,000 to $25,000 that they had taken from Person A's residence and not inventoried as evidence with the Chicago Police Department.

9. It was further part of the conspiracy that, on or about March 9, 2004, defendant JEROME A. FINNIGAN knowingly testified falsely before the Special Grand Jury of Cook County that only approximately $10,000 in United States currency was recovered from Person A's residence.

## PERSON C

10. It was further part of the conspiracy that, on or about September 18, 2004, near the intersection of 47th Street and Central Avenue in Chicago, defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, made a traffic stop of Person C without lawful basis, and took from Person C the keys to Person C's residence on South Luna in Chicago.

11. It was further part of the conspiracy that defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, went to Person C's residence and, without a warrant or consent, unlawfully searched Person C's residence and unlawfully took approximately $450,000 in United States Currency.

12. It was further part of the conspiracy that defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, released Person C, and divided among themselves the $450,000 that they had unlawfully taken from Person C's residence.

## PERSON D

13. It was further part of the conspiracy that, on or about November 11, 2004, on North Laramie Street in Chicago, defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, made a traffic stop of Person D without lawful basis.

14. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, went to Person D's residence on West Hadden Street in Chicago, and, without a warrant or consent, unlawfully searched Person D's residence and took approximately $10,000 in United States currency.

15. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, released Person D and divided among themselves the approximately $10,000 that they had taken from Person D's residence.

16. It was further part of the conspiracy that, on or about January 14, 2005, after news accounts in which Person D claimed that Chicago Police Officers stole money from Person D's residence, defendant KEITH A. HERRERA, together with other Chicago Police Officers, agreed to and did provide false statements to the Internal Affairs Division of the Chicago Police Department denying an illegal search and the taking of money and falsely claiming that a certain Chicago Police Sergeant was present at the search of Person D's residence.

## PERSON E

17. It was further part of the conspiracy that, on or about May 17, 2005, on South Karlov Avenue in Chicago, defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, made a traffic stop of Person E without lawful basis.

18. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, went to Person E's residence on South Karlov Avenue and, without a warrant or consent, unlawfully searched Person E's residence and took narcotics and approximately $30,000 in United States currency.

19. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the narcotics and only approximately $463 of the money recovered from Person E's residence and caused Person E to be charged with possession of the narcotics recovered from Person E's residence based upon police reports which falsely represented that Person E discarded narcotics when approached and that a total of only $463 was seized from Person E's residence.

20. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, divided among themselves the approximately $29,500 unlawfully taken from Person E's residence and not

inventoried as evidence with the Chicago Police Department.

21. It was further part of the conspiracy that, on or about September 9, 2005, on North Sacramento Boulevard in Chicago, defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, made a traffic stop of Person E without lawful basis and cited Person E for traffic offenses which Person E did not commit, for the purpose of intimidating Person E so that Person E would not complain about the Chicago Police Officers taking money on or about May 17, 2005.

### PERSONS F and G

22. It was further part of the conspiracy that, on or about August 12, 2005, after arresting Persons F and G, defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, without a warrant or consent, unlawfully searched Person F's residence on North Keeler in Chicago and unlawfully took two firearms, 12 kilograms of cocaine, 25 pounds of marijuana, and approximately $88,000 in United States currency.

23. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the firearms, cocaine and marijuana and $1800 of the money taken from Person F, and caused Persons F and G to be charged based upon police reports which falsely represented that Persons F and G were each arrested in possession of a firearm and that the entry and search of Person F's residence was lawful

because Person F had fled and been pursued into his residence.

24. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police Officers, divided among themselves approximately $86,000 of the money that they had unlawfully taken from Person F's residence and not inventoried as evidence with the Chicago Police Department.

25. It was further part of the conspiracy that defendant JEROME A. FINNIGAN's share of money unlawfully taken from arrestees in 2004 and 2005 totaled approximately $200,000.

26. It was further part of the conspiracy that defendant KEITH A. HERRERA's share of money unlawfully taken from arrestees in 2005 totaled approximately $40,000.

27. It was further part of the conspiracy that defendants JEROME A. FINNIGAN and KEITH A. HERRERA, together with other Chicago Police officers, misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, the purposes of and the acts done in furtherance of the conspiracy;

In violation of Title 18, United States Code, Section 241.

## **COUNT TWO**

The UNITED STATES ATTORNEY further charges:

1. The allegations of paragraph 1(a) of Count One are realleged and incorporated as though fully set forth herein.

2. In or about September and December of 2006, defendant JEROME A. FINNIGAN and other Chicago Police Officers assigned to the Special Operations Section, were charged in the Circuit Court of Cook County with felonies based upon their alleged abuse of their positions as Chicago Police Officers to unlawfully arrest and search persons, search residences, and seize property (the State Cases).

3. In or about July and August of 2007, defendant JEROME A. FINNIGAN discussed with Chicago Police Officer 1 paying someone to kill Chicago Police Officer 2, who defendant FINNIGAN understood would likely be a witness in one or more of the State Cases.

4. On or about September 18, 2007, defendant JEROME A. FINNIGAN met with Chicago Police Officer 1, who was then cooperating with federal investigators, in defendant FINNIGAN's residence and discussed the reliability and cost of hiring someone to kill Chicago Police Officer 2. During this meeting, defendant FINNIGAN suggested that Chicago Police Officer 1 could also try to find someone to kill Chicago Police Officer 2.

5. On or about September 21, 2007, at approximately 5:48 p.m., defendant JEROME A. FINNIGAN had a telephone conversation with Chicago Police Officer 1 in

which they agreed to meet. Defendant FINNIGAN and Chicago Police Officer 1 subsequently met in a parking lot, during which Chicago Police Officer 1 told defendant FINNIGAN that he had found someone to kill Chicago Police Officer 2 for money, but needed a photograph of Chicago Police Officer 2 in civilian clothes to give to the person who had been hired to kill Chicago Police Officer 2. Defendant FINNIGAN then gave Chicago Police Officer 1 a photograph of Chicago Police Officer 2 and instructed Chicago Police Officer 1 to wipe any fingerprints off of the photograph and to handle it carefully to avoid leaving any fingerprints on the photograph. Defendant FINNIGAN also agreed to provide Chicago Police Officer 1 with the new address of Chicago Police Officer 2 the next day.

6. On or about September 21, 2007, at approximately 6:28 p.m., shortly after the meeting between defendant JEROME A. FINNIGAN and Chicago Police Officer 1 ended, defendant FINNIGAN and Chicago Police Officer 1 had a telephone conversation in which they agreed that Chicago Police Officer 1 could come by defendant FINNIGAN's residence immediately to get Chicago Police Officer 2's new address.

7. On or about September 21, 2007, at approximately 6:28 p.m., at Chicago, in the Northern District of Illinois, Eastern Division,

JEROME A. FINNIGAN,

defendant herein, knowingly used and caused another to use a facility of interstate commerce, namely, a cellular telephone operated on the interstate network of T Mobile Communications,

a cellular telephone service provider, with the intent that a murder be committed in violation of the laws of the State of Illinois (720 ILCS 5/9-1) as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value;

In violation of Title 18, United States Code, Section 1958.

## **COUNT THREE**

The UNITED STATES ATTORNEY further charges:

1. At times material to this Count;

    a. Defendant JEROME A. FINNIGAN resided in Chicago, Illinois, and was employed by and received gross income from the Chicago Police Department; and

    b. During tax year 2004, defendant JEROME A. FINNIGAN also had and received approximately $174,500 in gross income by unlawfully taking money from arrestees for his own benefit.

2. On or about April 15, 2005, in the Northern District of Illinois, Eastern Division,

JEROME A. FINNIGAN,

defendant herein, willfully and knowingly made and caused to be made, subscribed and caused to be subscribed, a false 2004 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms, on behalf of defendant FINNIGAN and his spouse, which was verified by a written declaration that it was made under penalty of perjury (which contained the defendant's PIN), which return and accompanying schedules and forms defendant FINNIGAN filed electronically and caused to be filed electronically with the Internal Revenue Service.

3. Defendant JEROME A. FINNIGAN did not believe his 2004 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms to be true

and correct as to every material matter contained therein, in that defendant FINNIGAN represented and caused to be represented on that return that the total income of defendant FINNIGAN for the calendar year 2004 was $46,012; whereas, as defendant FINNIGAN then and there well knew and believed, the total income of defendant for the calendar year 2004 was approximately $230,278, defendant FINNIGAN having willfully omitted from his total income approximately $174,500 in gross income in the form of United States Currency defendant FINNIGAN had unlawfully taken from arrestees for his own benefit;

In violation of Title 26, United States Code, § 7206(1).

## COUNT FOUR

The UNITED STATES ATTORNEY further charges:

1. At times material to this Count;

   a. Defendant KEITH A. HERRERA resided in Chicago, Illinois, and was employed by and received gross income from the Chicago Police Department; and

   c. During tax year 2005, defendant KEITH A. HERRERA also had and received approximately $40,000 in gross income by unlawfully taking money from arrestees for his own benefit.

2. On or about April 15, 2006, in the Northern District of Illinois, Eastern Division,

KEITH A. HERRERA,

defendant herein, willfully and knowingly made and caused to be made, subscribed and caused to be subscribed, a false 2005 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms, on behalf of defendant HERRERA, which was verified by a written declaration that it was made under penalty of perjury (which contained the defendant's PIN), which return and accompanying schedules and forms defendant HERRERA filed electronically and caused to be filed electronically with the Internal Revenue Service.

3. Defendant KEITH A. HERRERA did not believe his 2005 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms to be true

and correct as to every material matter contained therein, in that defendant HERRERA represented and caused to be represented on that return that the total income of defendant KEITH A. HERRERA for the calendar year 2005 was $31,436; whereas, as defendant HERRERA then and there well knew and believed, the total income of defendant for the calendar year 2005 was approximately $72,236, defendant HERRERA having willfully omitted from his total income approximately $40,000 in gross income in the form of United States Currency defendant HERRERA had unlawfully taken from arrestees for his own benefit;

In violation of Title 26, United States Code, § 7206(1).


_____
UNITED STATES ATTORNEY