

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 2 6 2011
APR 26 201(
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 634-1 |
| vs. | ) | |
| | ) | |
| JEROME A. FINNIGAN | ) | |

### PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JEROME A. FINNIGAN, and his attorney, MARC A. BARNETT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The information in this case charges defendant with civil rights conspiracy, in violation of Title 18, United States Code, Section 241(Count 1); use of interstate commerce facilities in the commission of a murder-for-hire, in violation of Title 18, United States Code, Section 1958 (Count 2), and filing a false tax return, in violation of Title 26, United State Code, Section 7206(1) (Count 3).

3.     Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the information: Count Two, which charges the defendant with use of interstate commerce facilities in the commission of a murder-for-hire, in violation of Title 18, United States Code, Section 1958; and Count Three, which charges the defendant with filing a false 2004 federal income tax return, in violation of Title 26, United Sates Code, Section 7206(1).

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two and Three of the information.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.      With respect to Count Two of the Information:

In or about September and December of 2006, defendant JEROME A. FINNIGAN and other Chicago Police Officers assigned to the Special Operation Section, were charged in the Circuit Court of Cook County with felonies based upon their alleged abuse of their positions as Chicago Police Officers to unlawfully arrest and search persons, search residences, and seize property (the State Cases).

2

In and about July and August of 2007, defendant JEROME A. FINNIGAN discussed with Chicago Police Officer 1 paying someone to kill Chicago Police Officer 2, who defendant FINNIGAN understood would likely be a witness in one or more of the State Cases.

On or about September 18, 2007, defendant JEROME A. FINNIGAN met with Chicago Police Officer 1, who was then cooperating with federal investigators, in defendant FINNIGAN's residence and discussed the reliability and cost of hiring someone to kill Chicago Police Officer 2. During this meeting, defendant FINNIGAN suggested that Chicago Police Officer 1 could also try to find someone to kill Chicago Police Officer 2.

On September 21, 2007, at approximately 5:48 p.m., defendant JEROME A. FINNIGAN had a telephone conversation with Chicago Police Officer 1 in which they agreed to meet. Defendant FINNIGAN and Chicago Police Officer 1 subsequently met in a parking lot, during which Chicago Police Officer 1 told defendant FINNIGAN that he had found someone to kill Chicago Police Officer 2 for money, but needed a photograph of Chicago Police Officer 2 in civilian cloths to give to the person who had been hired to kill Chicago Police Officer 2. Defendant FINNIGAN then gave Chicago Police Officer 1 a photograph of Chicago Police Officer 2 and instructed Chicago Police Officer 1 to wipe any fingerprints off of the photograph and to handle it carefully to avoid leaving any fingerprints on the photograph. Defendant FINNIGAN also agreed to provide Chicago Police Officer 1 with the new address of Chicago Police Officer 2 the next day.

3

On September 21, 2007, at approximately 6:28 p.m., shortly after the meeting between defendant JEROME A. FINNIGAN and Chicago Police Officer ended, defendant FINNIGAN and Chicago Police Officer 1 had a telephone conversation in which they agreed that Chicago Police Officer 1 could come by defendant FINNIGAN's residence immediately to get Chicago Police Officer 2's new address.

On September 21, 2007, at approximately 6:28 p.m., at Chicago, in the Northern District of Illinois, Eastern Division, defendant JEROME FINNIGAN, knowingly used and caused another to use a facility of interstate commerce, namely, a cellular telephone operated on the interstate network of T Mobile Communications, a cellular telephone service provider, with the intent that a murder be committed in violation of the laws of the State of Illinois (720 ILCS 5/9-1) as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value; in violation of Title 18, United States Code, Section 1958.

b. With respect to Count Three of the Information:

Defendant JEROME A. FINNIGAN resided in Chicago, Illinois, and was employed by and received gross income from the Chicago Police Department. During tax year 2004, defendant JEROME A. FINNIGAN also had and received approximately $174,500 in gross income by unlawfully taking money from arrestees for his own benefit.

On or about April 15, 2005, in the Northern District of Illinois, Eastern Division,

defendant JEROME A. FINNIGAN willfully and knowingly made and caused to be made, subscribed and caused to be subscribed, a false 2004 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms, on behalf of defendant JEROME A. FINNIGAN and his spouse, which was verified by a written declaration that it was made under penalty of perjury (which contained the defendant's PIN), which return and accompanying schedules and forms defendant JEROME A. FINNIGAN filed electronically and caused to be filed electronically with the Internal Revenue Service.

Defendant JEROME A. FINNIGAN did not believe his 2004 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms to be true and correct as to every material matter contained therein, in that defendant JEROME A. FINNIGAN represented and caused to be represented on that return that the total income of defendant JEROME A. FINNIGAN for the calendar year 2004 was $46,012; whereas, as defendant JEROME A. FINNIGAN then and there well knew and believed, the total income of defendant for the calendar year 2004 was approximately $230,278, defendant JEROME A. FINNIGAN having willfully omitted from his total income approximately $174,500 in gross income in the form of United States Currency defendant JEROME A. FINNIGAN had unlawfully taken from arrestees for his own benefit; in violation of Title 26, United States Code, § 7206(1).

c.    Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

### Relevant Conduct - Civil Rights Conspiracy

i.    Defendant JEROME A. FINNIGAN and Keith A. Herrera were employed as Police Officers by the Chicago Police Department and assigned to the Special Operations Section, an elite city-wide unit. As Chicago Police Officers, defendant JEROME A. FINNIGAN and Keith A. Herrera were responsible for, among other things, enforcing the laws of the State of Illinois and the ordinances of the City of Chicago; investigating crimes committed in the City of Chicago; making lawful arrests; conducting lawful searches; collecting, preserving, and inventorying evidence; making truthful and accurate reports of their official activities; and testifying truthfully concerning their official activities.

From 2003 through 2006, at Chicago, in the Northern District of Illinois, Eastern Division, defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers assigned to the Special Operations Section, while acting under color of the laws of the State of Illinois and City of Chicago, did willfully conspire and agree with each other to injure, oppress, threaten and intimidate persons in the State of Illinois, namely certain persons in Chicago, in free exercise and enjoyment of a right and privilege secured by the Constitution and the laws of the United States, that is, the rights to be free from the

6

deprivation of liberty and property without due process of law by one acting under color of law; in violation of Title 18, United States Code, Section 241.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers assigned to the Special Operations Section, used and agreed to use their position and authority as Chicago Police Officers to unlawfully stop and detain persons, to unlawfully search persons and residences, to deprive persons of money without due process of law and to cause persons to be charged and detained based upon false evidence.

Defendant JEROME A. FINNIGAN, Keith A. Herrera and other Chicago Police Officers assigned to the Special Operations Section routinely and regularly performed unlawful arrests and unlawful searches for the purpose of conducting criminal investigations, and, when the opportunity arose, unlawfully took money for their own benefit from the arrestees and the places being searched, including the persons and places described below.

### PERSONS A and B

On February 14, 2004, defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, caused an Person A, whom they had arrested distributing 2 kilograms of cocaine to Person B, to disclose that a large quantity cocaine was located in a garage on South Campbell Avenue in Chicago, and then defendant FINNIGAN and other Chicago Police Officers, entered the garage and seized approximately 33 kilograms of cocaine.

Defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, caused Person A to disclose that money was located in Person A's residence on South Kostner Avenue in Chicago, and then defendant FINNIGAN and other Chicago Police Officers searched Person A's residence and took approximately $30,000 to $35,000 in United States Currency.

Defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the 35 kilograms of cocaine taken from Person A and the garage on South Campbell and only $10,000 of the money taken from Person A's residence, and caused Persons A and B to be charged based upon police reports which falsely represented that only $10,000 was taken from Person A's residence.

Defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, divided among themselves the approximately $20,000 to $25,000 that they had taken from Person A's residence and not inventoried as evidence with the Chicago Police Department.

On March 9, 2004, defendant JEROME A. FINNIGAN knowingly testified falsely before the Special Grand Jury of Cook County that only approximately $10,000 in United States currency was recovered from Person A's residence.

PERSON C

On September 18, 2004, near the intersection of 47th Street and Central Avenue in Chicago, defendant JEROME A. FINNIGAN, together with other Chicago Police Officers,

made a traffic stop of Person C without lawful basis, and took from Person C the keys to Person C's residence on South Luna in Chicago.

Defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, went to Person C's residence and, without a warrant or consent, unlawfully searched Person C's residence and unlawfully took approximately $450,000 in United States currency.

Defendant JEROME A. FINNIGAN, together with other Chicago Police Officers, released Person C and divided among themselves the $450,000 that they had unlawfully taken from Person C's residence.

### PERSON D

On November 11, 2004, on North Laramie Street in Chicago, defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, made a traffic stop of Person D without lawful basis.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, went to Person D's residence on West Hadden Street in Chicago, and, without a warrant or consent, unlawfully searched Person D's residence and took approximately $10,000 in United States currency.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, released Person D and divided among themselves the approximately $10,000 they had unlawfully taken from Person D's residence.

## PERSON E

On May 17, 2005, on South Karlov Avenue in Chicago, defendants JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, made a traffic stop of Person E without lawful basis.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, went to Person E's residence on South Karlov Avenue and, without a warrant or consent, unlawfully searched Person E's residence and took narcotics and approximately $30,000 in United States currency.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with Chicago Police Officers known to the United States Attorney, inventoried as evidence with the Chicago Police Department the narcotics and only approximately $463 of the money recovered from Person E's residence and caused Person E to be charged with possession of the narcotics recovered from Person E's residence based upon police reports which falsely represented that Person E discarded narcotics when approached and that a total of only $463 was seized from Person E's residence.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, divided among themselves the approximately $29,500 unlawfully taken from Person E's residence and not inventoried as evidence with the Chicago Police Department.

10

On September 9, 2005, on North Sacramento Boulevard in Chicago, defendants JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, made a traffic stop of Person E without lawful basis and cited Person E for traffic offenses which Person E did not commit, for the purpose of intimidating Person E so that Person E would not complain about the Chicago Police Officers taking money on or about May 17, 2005.

### PERSONS F and G

On August 12, 2005, after arresting Persons F and G, defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, without a warrant or consent, unlawfully searched Person F's residence on North Keeler in Chicago and unlawfully took two firearms, 12 kilograms of cocaine, 25 pounds of marijuana, and approximately $88,000 in United States currency.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the firearms, cocaine and marijuana and $1800 of the money taken from Person F, and caused Persons F and G to be charged based upon police reports which falsely represented that Persons F and G were each arrested in possession of a firearm and that the entry and search of Person F's residence was lawful because Person F had fled and been pursued into his residence.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police Officers, divided among themselves approximately $86,000 of the money that they had unlawfully taken from Person F's residence and not inventoried as evidence with the Chicago Police Department.

Defendant JEROME A. FINNIGAN and Keith A. Herrera, together with other Chicago Police officers, misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, the purposes of and the acts done in furtherance of the conspiracy.

Defendant JEROME A. FINNIGAN's share of money unlawfully taken from arrestees was approximately $174,500 in 2004 and $25,800 in 2005.

### Relevant Conduct - Tax Offense

ii.     On or about April 15, 2006, in the Northern District of Illinois, Eastern Division, defendant JEROME A. FINNIGAN willfully and knowingly made and caused to be made, subscribed and caused to be subscribed, a false 2005 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms, on behalf of defendant FINNIGAN and his spouse, which was verified by a written declaration that it was made under penalty of perjury (which contained the defendant's PIN), which return and accompanying schedules and forms defendant FINNIGAN filed electronically and caused to be filed electronically with the Internal Revenue Service.

Defendant JEROME A. FINNIGAN did not believe his 2005 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms to be true and correct as to every material matter contained therein, in that defendant FINNIGAN represented and caused to be represented on that return that the total income of defendant FINNIGAN for the calendar year 2005 was $77,542; whereas, as defendant JEROME A. FINNIGAN then and there well knew and believed, the total income of defendant for the calendar year 2005 was approximately $103,342, defendant FINNIGAN having willfully omitted from his total income approximately $25,800 in gross income in the form of United States Currency defendant JEROME A. FINNIGAN had unlawfully taken from arrestees for his own benefit; in violation of Title 26, United States Code, § 7206(1).

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count Two carries a maximum sentence of 10 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further

13

understands that with respect to Count Two the judge also may impose a term of supervised release of not more than three years.

      b.    Count Three carries a maximum sentence of 3 years' imprisonment. Count Three also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Three, the judge also may impose a term of supervised release of not more than one year.

      c.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      d.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

      e.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 13 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2010 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    Pursuant to Guideline § 3D1.1 and 1.2, which govern the procedure for determining offense level for multiple counts, the offenses of conviction in Counts One, Two and Three, and the civil rights relevant conduct do not group. Count Three and the tax offense relevant conduct do group.

ii.    Pursuant to Guideline § 2H1.1 (a)(1), the base offense level for Count One is the offense level applicable to any underlying offense, which in this case is unlawful restraint.

iii.    Pursuant to Guideline § 2A4.1(a)(1), the base offense level for unlawful restraint is 32. No other enhancements under § 2A4.1 apply.

15

iv.     Pursuant to Guideline § 2H(b)(1), the base offense level is increased by 6 to 38, because defendant was a public official at the time of the offense and the offense was committed under color of law.

v.      Pursuant to Guideline § 3C1.1, the base offense level is increased by 2 to 40, for obstruction based upon the conduct constituting the offense of conviction for Count Two.

vi.     Pursuant to Guideline § 2A1.5, the base offense level applicable to Count Two is 33. No other adjustments apply.

vii.    Pursuant to Guideline § 2T1.1 (a)(1), the base offense level for Count Four and the tax offense relevant conduct is the offense level from the tax table, Guideline § 2T4.1. Because the tax loss is approximately $55,931, the base offense level is 14, pursuant to Guideline § 2T1.1 (E).

viii.   Pursuant to Guideline § 2T1.1 (b)(1), because the defendant failed to report income from criminal activity the base offense level is increased by 2 to 16.

ix.     Pursuant to Guideline § 3D1.4, which governs the procedure for determining offense level for multiple counts: Count One, which has an offense level of 40, receives 1 unit; Count Two, which has an offense level of 33, receives ½ unit; and Count Three, which has an offense level of 16, receives no units. The total of 1 and ½ units results in a 1 level increase in the offense level to 41.

16

    x.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    xi.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 38, which,

when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 235 to 293 months' imprisonment, which is constrained by the 156 month combined statutory maximums of Counts Two and Three, in addition to any supervised release, fine, and restitution the Court may impose.

e.       Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.       Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.     Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois or by a representative of the Cook County States Attorney's Office. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. This Agreement will be governed, in part, by

Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons within the range of between 120 months (the statutory maximum sentence on Count Two) and 156 months (the combined statutory maximum sentences on Counts Two and Three). The government will recommend a sentence of 156 months. Defendant is free to recommend any sentence within the agreed range. Other than imposing a term of incarceration within the agreed range, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes a sentence within the agreed range of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose a sentence within the agreed range of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

13.     If, in its sole discretion, the government determines subsequent to defendant's sentencing in this case that defendant has provided substantial assistance, as described in Fed. R. Crim. P. 35(b)(2), which assistance has not been taken into account by the parties in fashioning the sentencing agreement in this case, and is not taken into account by the Court in imposing sentence, then the government will move for a reduction in his sentence pursuant to Fed. R. Crim. P. 35(b)(4). Defendant understands that it is solely within the government's discretion whether to move for a reduction in his sentence, and he agrees not to challenge the

government's decision if it determines in its discretion that such a motion is not appropriate. Defendant also understands that should the government seek such a reduction as outlined above, it is solely within the Court's discretion to grant or reject such a request, and to determine the extent of any reduction.

14. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the information as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

16. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 634-1.

17. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District

of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

18.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal tax case.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     Right to be charged by indictment. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.   If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

23

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.      **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Plea

24

Agreement, including the agreement to dismiss Count One of the indictment as to the defendant. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

d.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

20.     Defendant understands that he has the right to have the criminal charges in the information brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charges in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute

25

of limitations or upon the timeliness with which the charges in the information were brought.

## Presentence Investigation Report/Post-Sentence Supervision

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the

Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## **Other Terms**

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request.

26.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in

connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(I). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require

defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    4 / 26 / 11

PATRICK J. FITZGERALD
United States Attorney

JEROME A. FINNIGAN
Defendant

BRIAN P. NETOLS
Assistant U.S. Attorney

MARC A. BARNETT
Attorney for Defendant

JOHN ROBERT BLAKEY
Special Assistant U.S. Attorney

LYNN McCARTHY
Special Assistant U.S. Attorney