1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3
     UNITED STATES OF AMERICA,          )     No. 2007 CR 634
4
              Plaintiff,                )     April 26, 2011
5
         v.                             )     1:00 p.m.
6
     JEROME FINNIGAN,                    )
7
              Defendant.                )
8

9         TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
           BEFORE THE HON. BLANCHE M. MANNING
10

11   APPEARANCES:

12
     On behalf of Plaintiff:    MR. BRIAN P. NETOLS
13                              ASSISTANT UNITED STATES ATTORNEY
                                219 South Dearborn Street, 5th floor
14                              Chicago, Illinois 60604
                                (312) 353-5300
15
                                MR. JOHN R. BLAKEY
16                              MS. LYNN McCARTHY
                                Assistant States Attorney
17                              Cook County, Illinois
                                2650 South California Avenue
18                              Chicago, Illinois 60608

19   On behalf of Defendant:    MR. MARC M. BARNETT
                                LAW OFFICES OF MARC M. BARNETT
20                              53 West Jackson Boulevard
                                Chicago, Illinois 60604
21                              (312) 385-4394

22

23              MICHAEL P. SNYDER, FCRR
                 Official Court Reporter
24             United States District Court
          219 South Dearborn Street, Room 1432
25               Chicago, Illinois 60604
                   (312) 435-5563

1          THE CLERK:  07 CR 634, United States versus Finnigan.

2          MR. NETOLS:  Good afternoon, Your Honor.  Brian Netols

3    on behalf of the United States.

4          MR. BLAKEY:  Jack Blakey on behalf of the United

5    States.

6          MR. BARNETT:  Good afternoon, Your Honor.

7          MS. McCARTHY:  Lynn McCarthy on behalf of the United

8    States.

9          MR. BARNETT:  Marc Barnett on behalf of Jerome

10   Finnigan.

11         THE DEFENDANT:  Good afternoon.

12         THE COURT:  Good afternoon.

13         Okay.  This is a change of plea, is that correct?

14         MR. NETOLS:  Judge, for the record, we have a signed

15   plea, and it's identical to the one we tendered to your

16   chambers earlier for your review.  There have been no changes.

17         THE COURT:  All right.

18         You are Jerome Finnigan?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  All right.  Mr. Finnigan, it's my

21   understanding that it's your intention at this time to waive

22   indictment and offer a plea of guilty.  Is that correct, sir?

23         THE DEFENDANT:  Yes.  Yes, Your Honor, it is.

24         THE COURT:  Mr. Finnigan, before I can accept your

25   waiver of indictment and guilty plea, I have to make certain

1   determinations.  I have to determine that you're competent to

2   plead at this time, you've had the assistance of counsel, that

3   you understand your right to be prosecuted only by indictment,

4   and you understand your trial rights.  I have to determine that

5   you understand the nature of the charges against you, that your

6   waiver and plea are voluntary, and that there is an independent

7   factual basis for your plea.

8          At this time I am going to have you placed under oath,

9   and I'll ask you certain questions regarding this matter.

10  Before I do that, I want you to understand certain things.

11         Number one, you may consult with your lawyer while I'm

12  asking you questions, and if you wish to do so, I will

13  interrupt the proceedings at any point to allow you to speak to

14  your lawyer, okay?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  You must give truthful answers.  Any false

17  answers to any of my questions could subject you to prosecution

18  for perjury or making false statement.  And in giving truthful

19  answers to some of my questions, you will be waiving your right

20  not to testify against yourself, some of your answers may very

21  well be incriminating, and you will have to admit your guilt.

22         Do you understand everything that I have just said?

23         THE DEFENDANT:  I do, ma'am.

24         THE COURT:  And understanding that, are you willing to

25  waive or give up your right to remain silent and answer my

1    questions?

2         THE DEFENDANT:  I am, ma'am.

3         THE COURT:  Okay.  And if at any time you do not

4    understand my questions, please let me know.  It's very

01:07:19    5    essential to a valid plea that you understand each question at

6    each step of the proceedings as we go along, okay?

7         THE DEFENDANT:  Yes, thank you.

8         THE COURT:  Okay.  Please swear the defendant.

9      (Defendant sworn.)

01:07:30    10         THE COURT:  All right.  Sir, state your full name for

11    the record.

12         THE DEFENDANT:  Jerome Finnigan.

13         THE COURT:  And how old are you, Mr. Finnigan?

14         THE DEFENDANT:  I'm 48, ma'am.

01:07:43    15         THE COURT:  Mr. Finnigan, I take it you were born and

16    raised in this country?

17         THE DEFENDANT:  I was.

18         THE COURT:  Okay.  Where do you reside?

19         THE DEFENDANT:  Currently at the MCC, but I resided in

01:07:52    20    the City of Chicago.

21         THE COURT:  Okay.  Are you married, sir?

22         THE DEFENDANT:  I am, ma'am.

23         THE COURT:  What is the extent of your education?

24         THE DEFENDANT:  I have high school and some college

01:08:02    25    courses.

1    THE COURT:  Okay.  And over the past three years,

2  before you were incarcerated, what kind of work did you engage

3  in?

4    THE DEFENDANT:  I was a police officer with the City

01:08:10   5  of Chicago.

6    THE COURT:  Are you currently in good physical health,

7  sir?

8    THE DEFENDANT:  I am, ma'am.

9    THE COURT:  Are you currently under a doctor's care or

01:08:17   10  taking any kind of medication?

11    THE DEFENDANT:  I do.  I have diabetes.

12    THE COURT:  Okay.  And have you taken any drugs or

13  alcoholic beverages within the last 24 hours?

14    THE DEFENDANT:  I have not, ma'am.

01:08:26   15    THE COURT:  You've taken your --

16    THE DEFENDANT:  Just the diabetes pills, yes, but no

17  other types of drugs, no.

18    THE COURT:  Okay.  Does it affect your ability to

19  understand anything?

01:08:34   20    THE DEFENDANT:  It does not.

21    THE COURT:  Okay.  Have you ever been under the care

22  of a doctor or in a hospital for a mental condition?

23    THE DEFENDANT:  I have not.

24    THE COURT:  Okay.  And do either of the attorneys have

01:08:45   25  any doubt as to the defendant's competence to waive indictment

1    and plead at this time?

2             MR. BARNETT:  No, I do not.

3             MR. NETOLS:  No, Judge.

4             THE COURT:  All right.  The Court finds the defendant

01:08:54    5    is competent to waive indictment and offer a plea of guilty to

6    the information before the Court.

7             Sir, have you had sufficient time to talk to your

8    lawyer about the case?

9             THE DEFENDANT:  I did, ma'am.  I reviewed a number of

01:09:08   10    times this agreement and the case, and I also reviewed some

11    today with him too.

12             THE COURT:  Okay.  And I take it you told him

13    everything you know about the case, is that correct?

14             THE DEFENDANT:  I did.

01:09:19   15             THE COURT:  Do you need any additional time to discuss

16    anything with him?

17             THE DEFENDANT:  No.

18             THE COURT:  Okay.  Are you satisfied with your

19    counsel's advice and the efforts that he's put forth on your

01:09:30   20    behalf?

21             THE DEFENDANT:  Yes, I am, ma'am, thank you.

22             THE COURT:  Are there any pending motions?

23             MR. NETOLS:  No.

24             MR. BARNETT:  No.

01:09:35   25             THE COURT:  Okay.

1          Have you received a copy of the information?

2          THE DEFENDANT:  I did.

3          THE COURT:  Okay.  And did you read it?

4          THE DEFENDANT:  I did, ma'am.

01:09:49   5          THE COURT:  And I take it you've consulted with your

6     attorney regarding it?

7          THE DEFENDANT:  I did.

8          THE COURT:  Okay.  Do you wish to have the information

9     read or do you waive the reading of it?

01:09:59  10          THE DEFENDANT:  We'll waive the reading.

11          THE COURT:  You'll waive the reading?

12          THE DEFENDANT:  Yes, thank you.

13          THE COURT:  You do understand the nature of the

14     charges, the charge before the Court?

01:10:07  15          THE DEFENDANT:  I do, ma'am.

16          THE COURT:  Counsel, without going into the specific

17     facts of the case, would you offer just an explanation that,

18     the explanation that you've given to your client as to the

19     nature of the charges in this information.

01:10:18  20          MR. BARNETT:  Well, he's going to be pleading guilty

21     to Count 2 and Count 3 of the information.  The first charge

22     Count 2 that he used interstate commerce to facilitate the

23     commission of a murder for hire.

24          I explained what the elements of that were, I reviewed

01:10:33  25     the facts of that to him, and he understands that the

1    government can meet their burden of proof on Count 2.

2          On Count 3, that's simply a charge of tax evasion.  He

3    understands that he -- I explained to him if he misstated or

4    knowingly misstated his income on his tax return in that year,

01:10:54    5    that he has violated that section of the statute.  We reviewed

6    the facts on that basis, and he understands that he did violate

7    that.

8          THE COURT:  All right.  Mr. Finnigan, you do

9    understand that if you do not waive indictment, you cannot be

01:11:07    10   charged with a felony unless a grand jury finds by the return

11   of an indictment that there was probable cause to believe that

12   the crime charged in the criminal information was committed and

13   that you committed the crime?

14         THE DEFENDANT:  Yes, ma'am, I do.

01:11:21    15         THE COURT:  And in order to obtain an indictment, the

16   government has to present the charges to a grand jury before

17   the matter may be brought to this Court.  Do you understand

18   that?

19         THE DEFENDANT:  Yes, I do, ma'am.

01:11:31    20         THE COURT:  And you understand, sir, a grand jury is

21   supposed of at least 16 and not more than 23 persons, and at

22   least 12 of those grand jurors must find that there is probable

23   cause to believe the crime charge was committed by you before

24   you can be indicted, do you understand that, sir?

01:11:46    25         THE DEFENDANT:  I do, ma'am.

1    THE COURT:  And the grand jury might or might not vote
2    probable cause, do you understand that?
3        THE DEFENDANT:  I do, ma'am.
4        THE COURT:  And if you waive indictment by the grand
01:11:55    5    jury, then the case will proceed against you on the U.S.
6    Attorney's criminal information just as though you had been
7    indicted.  Do you understand that, sir?
8        THE DEFENDANT:  I do, ma'am.
9        THE COURT:  Now, sir, I've been handed a document
01:12:14    10    entitled "United States of America versus Jerome Finnigan," and
11    it is entitled "Waiver of indictment," and at the bottom I see
12    above the -- oh, I'm sorry.  This has not been yet executed, is
13    that correct?
14        Maybe it is.
01:12:32    15        MR. BARNETT:  May I approach, Judge?
16        THE COURT:  I see a signature, but I can't tell if
17    it's one or two.
18        MR. BARNETT:  Okay.
19        Thank you.  It's two.
01:12:42    20        THE COURT:  It's two?
21        MR. BARNETT:  Mr. Finnigan's is kind of hard to
22    detect.  It's there.
23        THE COURT:  Okay.  Mr. Finnigan, is that your
24    signature on the top line of that information?
01:12:54    25        THE DEFENDANT:  It is, ma'am.

1    THE COURT:  Waiver of indictment, I'm sorry.

2        And before you signed it, sir, did you read it?

3    THE DEFENDANT:  I did, ma'am.

4    THE COURT:  And did you have any difficulty in reading

01:13:03  5  it?

6    THE DEFENDANT:  I did not.

7    THE COURT:  And I take it you discussed the matter of

8  waiving indictment with your attorney?

9    THE DEFENDANT:  I did, ma'am.

01:13:08  10  THE COURT:  Have there been my threats or promises

11  made to you to induce you to waive indictment?

12    THE DEFENDANT:  There have not been.

13    THE COURT:  Counsel, do you know of any reason why

14  your client should not waive indictment?

01:13:17  15  MR. BARNETT:  I have no reason whatsoever.

16    THE COURT:  All right.  Mr. Finnigan, is it your wish

17  to waive indictment by a grand jury as to the charges before

18  the Court?

19    THE DEFENDANT:  It is, ma'am.

01:13:26  20  THE COURT:  Okay.  Now, let me just read to you what

21  the information charges.  It charges you with civil rights

22  conspiracy in violation of Title 18 of United States Code

23  Section 241, that's Count 1; and charges you with use of

24  interstate commerce facility in the commission of a murder for

01:13:57  25  hire in violation of Title 8 United States Code Section 1958,

1    that's Count 2.

2            Is he pleading guilty to two or three counts?

3            MR. BARNETT:  Two.

4            THE COURT:  To two counts?

01:14:09    5            MR. BARNETT:  Counts 2 and 3.

6            THE COURT:  Okay.  And Count 3 charges you with filing

7    a false tax return in violation of Title 26 of United States

8    Code Section 7206.  That's Count 3.  Do you understand that,

9    sir?

01:14:23   10            THE DEFENDANT:  I do, ma'am.

11            THE COURT:  Okay.  Now, you do understand, Mr.

12   Finnigan, that under the constitution and the laws of the

13   United States you are entitled to have a trial by jury as to

14   charges against you, do you realize that?

01:14:39   15            THE DEFENDANT:  I do, ma'am.

16            THE COURT:  Do you understand, however, that if you

17   plead guilty and if I accept your guilty plea, there will not

18   be a trial, I will simply enter a judgment of guilty and

19   sentence you on the basis of your guilty plea?  Do you

01:14:50   20   understand that?

21            THE DEFENDANT:  I do, ma'am.

22            THE COURT:  Do you understand that you have the right

23   to plead not guilty?

24            THE DEFENDANT:  I do, ma'am.

01:14:55   25            THE COURT:  Do you understand if you plead not guilty,

1 you have a right to have a speedy trial, you have the right to

2 see and hear all the witnesses called to testify against you,

3 you have a right to utilize the subpoena power of this Court to

4 compel witnesses to come in and testify on your behalf, and at

01:15:07 5 trial your counsel on your behalf would have a right to

6 cross-examine witnesses.  Do you understand this?

7    THE DEFENDANT:  I do.

8    THE COURT:  Do you understand further that at trial

9 you would be presumed to be innocent, and the government would

01:15:18 10 be required to prove your guilt by competent evidence beyond a

11 reasonable doubt before you could be found guilty, and you

12 would not have to prove your innocence?  Do you understand

13 that, sir?

14    THE DEFENDANT:  I do, ma'am.

01:15:29 15    THE COURT:  You do understand that at any trial, while

16 you have the right to testify if you chose to do so, you also

17 would have the right not to testify, and no suggestion or

18 inference of guilt could be drawn from the fact that you did

19 not testify.  Do you understand that, sir?

01:15:44 20    THE DEFENDANT:  I do.

21    THE COURT:  Do you understand further that you have

22 the right to offer evidence tending to show you are not guilty

23 of the offense charged?

24    THE DEFENDANT:  I do, ma'am.

01:15:52 25    THE COURT:  Okay.  And, Mr. Finnigan, the trial could

1  either be a jury trial or a trial by a judge without a jury.

2  Do you understand that?

3          THE DEFENDANT:  I do, ma'am.

4          THE COURT:  However, if the trial were before a judge,

01:16:03   5  you, the judge, and the government would all have to agree to

6  this procedure, do you understand that, sir?

7          THE DEFENDANT:  I do, ma'am.

8          THE COURT:  If the trial were a jury trial, the jury

9  would be composed of 12 lay persons selected at random from the

01:16:16  10  community.  You and your attorney would have an opportunity to

11  exclude jurors for cause if some kind of bias or

12  disqualification is shown or without cause by exercising what

13  we refer to as peremptory challenges or strikes.  Do you

14  understand that, sir?

01:16:30  15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Do you understand that a jury, before they

17  could find you guilty, would have to agree unanimously, that

18  is, all of them would have to agree?  Do you understand that,

19  sir?

01:16:40  20          THE DEFENDANT:  Yes, ma'am, I do.

21          THE COURT:  Do you understand further, Mr. Finnigan,

22  that at any trial before a judge or a jury, both would be

23  guided by the rule that requires that guilt be determined

24  beyond a reasonable doubt?  Do you understand that, sir?

01:16:52  25          THE DEFENDANT:  I do, ma'am.

1    THE COURT:  Do you further understand that you, of

2    course, have a right to have an attorney represent you at

3    trial.  If you didn't have one and couldn't afford one, one

4    would be appointed to represent you free of charge.  Do you

01:17:03    5    understand that, sir?

6    THE DEFENDANT:  Yes, ma'am.

7    THE COURT:  Do you understand further that if you're

8    found guilty after a trial and sentenced, you would have a

9    right to appeal from both the guilty conviction as well as the

01:17:12    10    sentence, that is to say, any errors or mistakes made by the

11    Court during the course of the trial or that the lawyers make

12    would be presented to a three-judge panel, a higher court, to

13    determine if mistakes were made?  Do you understand that, sir?

14    THE DEFENDANT:  I do, ma'am.

01:17:27    15    THE COURT:  And if you were indigent and didn't have

16    money to provide for a transcript or an attorney, both would be

17    appointed, both would be given to you free of charge, and other

18    appeal costs would be free of charge.  Do you understand that,

19    sir?

01:17:40    20    THE DEFENDANT:  I do, ma'am.

21    THE COURT:  Do you also understand that if I accept

22    your guilty plea, you would still be able to appeal an illegal

23    sentence and one that is contrary to the guidelines?  Do you

24    understand that? .

01:17:50    25    THE DEFENDANT:  I do.

1       THE COURT:  Now, is there a waiver of appeal?

2       MR. NETOLS:  There is, as well as collateral rights,

3   Judge.  It's on page 24.

4       THE COURT:  Page 24?

01:18:00   5       All right.  Now, notwithstanding what I've just said

6   about your right to appeal, it appears that in your plea

7   agreement you are waiving all appellate issues that would have

8   been available had you exercised your right to trial.  Do you

9   understand that, sir?

01:18:16   10       THE DEFENDANT:  I do, ma'am,

11       THE COURT:  It appears that you are waiving your right

12   to appeal this conviction, you are waiving any pretrial rulings

13   made by the Court.  Is that correct, sir?

14       THE DEFENDANT:  It is, ma'am.

01:18:47   15       THE COURT:  And you are also waiving any part of the

16   sentence or the manner in which that sentence will be

17   determined including any term of imprisonment and fine within

18   the maximums that the law provides for, do you understand that,

19   including any order of restitution?

01:19:11   20       THE DEFENDANT:  Yes, ma'am.

21       THE COURT:  And that's in exchange for concessions

22   made by the US government in your plea agreement, do you

23   understand that, sir?

24       THE DEFENDANT:  Yes, ma'am.

01:19:18   25       THE COURT:  Including apparently you're dismissing

1    Count 1, is that correct?

2              MR. NETOLS:  Yes, Judge.

3              THE COURT:  Okay.

4              MR. NETOLS:  There's also a 2255 waiver later on in

01:19:25    5    that paragraph.

6              THE COURT:  Right.

7              MR. NETOLS:  And also I don't know how you covered

8    this with the last defendant, but Mr. Finnigan's cooperation

9    was prolonged and, so it went to the point where the statute of

01:19:35    10   limitations would have run, so Mr. Finnigan executed a number

11   of statute waivers.  So paragraph 20 also makes it clear that

12   one of the things he's waiving is the right to have certain

13   charges brought within five years.

14             THE COURT:  Okay.  And it appears that you are also

01:19:59    15   waiving the right to challenge your conviction and the sentence

16   as well as the manner in which the sentence was determined, you

17   are waiving the right to collaterally attack these issues, do

18   you understand that, sir?

19             THE DEFENDANT:  Yes, ma'am.

01:20:24    20             THE COURT:  The waiver that we are talking about,

21   however, does not apply to any contention by you of

22   involuntariness or ineffective assistance of counsel, which

23   would relate directly to the waiver.  Do you understand that,

24   sir?

01:20:38    25             THE DEFENDANT:  Yes, ma'am.

1    THE COURT:  And it does not prohibit you from seeking

2    a reduction of sentence based on a, directly on a change in the

3    law that would be applicable to you, do you understand that,

4    sir?

01:20:50    5    THE DEFENDANT:  Yes, ma'am.

6    THE COURT:  You've read this document, is that

7    correct, sir?

8    THE DEFENDANT:  I have, ma'am.

9    THE COURT:  Okay.  And you understand that by pleading

01:21:10    10    guilty, you are waiving all of the rights that are set forth in

11    these prior paragraphs.  The prior paragraph that I allude to

12    specifically is paragraph C.

13    THE DEFENDANT:  Yes.

14    THE COURT:  Do you understand that, sir?

01:21:21    15    THE DEFENDANT:  Yes, I do.

16    THE COURT:  As counsel pointed out, you're also

17    waiving the right to have criminal charges in the information

18    brought within five years of the last of the alleged acts

19    constituting the specified violation.  Do you understand that,

01:21:44    20    sir?

21    THE DEFENDANT:  Yes, ma'am, I do.

22    THE COURT:  Okay.  So you are waiving your right to

23    have any of the charges in the information brought against you

24    within the period that is, that is in the law, in the statute

01:21:57    25    of limitations, do you understand that?

1      THE DEFENDANT:  Yes, ma'am.

2      THE COURT:  Do you understand, sir, that if you plead

3  guilty, all the rights that I've just described to you, you are

4  waiving or giving up?

01:22:14  5      THE DEFENDANT:  Yes, ma'am, I do.

6      THE COURT:  Do you understand if you plead guilty, if

7  I accept your guilty plea, by there will not be a trial, I will

8  simply enter a finding of guilty and sentence you on the basis

9  of your guilty plea after I have considered the presentence

01:22:25  10  investigation, the sentencing guidelines and the plea

11  agreement?  Do you understand that, sir?

12      THE DEFENDANT:  I do, ma'am.

13      THE COURT:  All right.  Other than the plea agreement

14  that is contained in this document that you've signed --

01:22:47  15      Maybe you could direct me, what page is the signature

16  on this?

17      MR. NETOLS:  It should be on, the signature page

18  should be on the last page.

19      THE COURT:  Judge, I think you may have the draft I

01:23:10  20  gave you because I see the red mark on the top.  They are

21  identical, so you can't tell unless you go to the back.  It

22  should have two staples, the plea with the two staples across

23  the top is the original.

24      THE COURT:  I have it.

01:23:27  25      Have there been any other promises made to you that

1  are not in writing, sir?

2      THE DEFENDANT:  There have not, ma'am.

3      THE COURT:  Okay.

4      MR. NETOLS:  Judge, the only thing that is there, it's

01:23:36  5  understood is there are state charges that are based on the

6  same conduct.  After Mr. Finnigan is sentenced in this case,

7  the state, the chief of special pros from the State's

8  Attorney's office is here, the state is going to dismiss the

9  state charges.

01:23:49  10     MR. BLAKEY:  That's correct, Your Honor.

11     THE COURT:  That is correct?  Do you understand that?

12     THE DEFENDANT:  I do, Your Honor.

13     THE COURT:  Now, sir, on page 30 of this document I

14  see a number of signatures, one of which is above the

01:24:01  15  typewritten name of Jerome A. Finnigan?

16     THE DEFENDANT:  That's correct.

17     THE COURT:  Is that your signature?

18     THE DEFENDANT:  It is, ma'am.

19     THE COURT:  And did you read this document before you

01:24:09  20  signed it?

21     THE DEFENDANT:  I did.

22     THE COURT:  Did you have any difficulty or trouble

23  reading it?

24     THE DEFENDANT:  None whatsoever, ma'am.

01:24:14  25     THE COURT:  I take it you discussed each and every

1  part of it with your attorney?

2       THE DEFENDANT:  I did.

3       THE COURT:  Do you need any additional time to discuss

4  any parts of it with him at this time?

01:24:22  5       THE DEFENDANT:  No, ma'am.

6       THE COURT:  Do you have any questions about this

7  agreement?

8       THE DEFENDANT:  No, ma'am.

9       THE COURT:  Okay.  Just for the record, could you just

01:24:28  10  summarize for me what, if any, agreements or promises have been

11  made to you in connection with these charges.

12       THE DEFENDANT:  No agreements or promises have been

13  made to me regarding this, Your Honor.

14       THE COURT:  Are there any counts -- there are counts

01:24:42  15  that will be dismissed, is that correct?

16       THE DEFENDANT:  There are counts that will be

17  dismissed, that is correct, but that was above and beyond.

18  There were no promises made by Mr. Netols, Mr. Blakey or Miss

19  McCarthy regarding this plea other than what's contained in the

01:24:58  20  plea agreement, ma'am.

21       THE COURT:  Okay.

22       MR. BARNETT:  Your Honor, may I speak --

23       (Pause.)

24       THE DEFENDANT:  I didn't -- I misunderstood what you

01:25:19  25  were saying, Your Honor, I'm sorry.

1   My understanding of the plea agreement, is that what
2   you want?

3   THE COURT:  Yes.

4   THE DEFENDANT:  Okay, I'm sorry.

01:25:25   5   Yes, the understanding is that I am going to plead to
6   two counts.  The other count is going to be dismissed.  I'm
7   going to be sentenced to the guideline range that Mr. Netols
8   and Mr. Barnett have arranged between the two of them, 120 to
9   156 months, and that I have no expectations from you other than
01:25:50   10   the fact that when the presentence investigation is done and my
11   background and everything else, that you would look at that as
12   a whole, as a person I am and not based on just these charges
13   today.  That's not the person I am.  So.

14   THE COURT:  Okay.  Now, Mr. Finnigan, you do
01:26:35   15   understand that the maximum possible penalty under Count 2 is
16   ten years imprisonment?

17   THE DEFENDANT:  I do, ma'am.

18   THE COURT:  And Count 2 also carries a maximum fine of
19   $250,000.

01:26:51   20   THE DEFENDANT:  I do, ma'am.

21   THE COURT:  And the Court also must order costs of
22   prosecution not to exceed $500?

23   THE DEFENDANT:  Yes, I do.

24   THE COURT:  And do you understand that the Court may
01:27:04   25   also impose a period of supervised release of not more than

1  three years?

2  THE DEFENDANT:  I do, ma'am.

3  THE COURT:  And Count 3 carries a maximum sentence of

4  three years imprisonment and also carries a maximum fine of

01:27:19  5  $250,000 and the Court must also order costs of prosecution

6  also not to exceed $500.

7  Can you hear me?

8  THE DEFENDANT:  Yes, ma'am, I can.

9  THE COURT:  Okay.  And with respect to that count, the

01:27:34  10  Court may also impose a sentence of -- strike that -- a term of

11  supervised release of not more than a year.  Do you understand

12  that, sir?

13  THE DEFENDANT:  I do, ma'am.

14  THE COURT:  Do you understand the Court must also

01:27:44  15  order restitution to the victims of the offense in the amount

16  the Court will determine?  Do you understand that, sir?

17  THE DEFENDANT:  Yes, ma'am, I do.

18  THE COURT:  And you must, you will be assessed $100 on

19  each count to which you plead guilty in addition to any other

01:27:57  20  penalty or restitution.  Do you understand that, sir?

21  THE DEFENDANT:  I do, ma'am.

22  THE COURT:  Now, I take it you and your attorney have

23  also discussed the sentencing guidelines?

24  THE DEFENDANT:  We have, ma'am.

01:28:16  25  THE COURT:  Do you understand that the Court will be

1    guided by the sentencing guidelines?

2              THE DEFENDANT:  Yes, ma'am, I do.

3              THE COURT:  And do you understand they are advisory,

4    they are not mandatory, but the Court must also take them into

01:28:31    5    consideration?

6              THE DEFENDANT:  I do, ma'am.

7              THE COURT:  And you understand the guidelines consist

8    of two big numbers, two numbers, I should say.

9              THE DEFENDANT:  Yes, ma'am, I do.

01:28:45    10             THE COURT:  Criminal offense level and criminal

11   history category?

12             THE DEFENDANT:  Yes.

13             THE COURT:  With respect to the sentencing guidelines,

14   the count, the offenses of conviction in Counts 1, 2, and 3 --

01:29:08    15   strike that.

16             With respect to Count 1, let's go like that.  With

17   respect to Count 1, the offense level, the base offense level

18   for unlawful restraint will be 32.  The base offense level

19   would be increased by six to 38 because you were a public

01:29:47    20   official at the time of the offense and the offense was

21   committed under color of law.  And the base offense level will

22   be increased by another two to a level 40 for obstruction based

23   upon conduct constituting the offense of conviction for Count

24   2.

01:30:04    25             And the base offense level applicable to Count 2 is

1   33, and there are no other adjustments that apply to that.

2        The base offense level for Count 4 and the tax offense

3   would be 14, because the tax loss is about $55,931, the base

4   offense level would be 14.  And there was a failure to report

01:30:34    5   income from this criminal activity, so the base offense level

6   in that one will be increased by two to 16.

7        We have multiple counts here for Count 1 which has an

8   offense level of 40, that will be one unit; Count 2 has an

9   offense level of 33, that will be a half unit; and Count 3 has

01:31:08   10   an offense level of 16, that will be no units.  So the total of

11   one and a half units would result in a one-level increase to

12   the offense level to 41.

13        There will be a two-level reduction, and because you

14   timely notified the government of your intent to plead guilty,

01:31:40   15   you would be entitled to a two-level reduction for acceptance

16   and a one-level reduction in the offense level.

17        And it appears that what we know about your background

18   at this point is that you are in a criminal history category I,

19   but there will be an investigation to make that determination.

01:31:56   20        Do you understand that?

21        THE DEFENDANT:  Yes, ma'am.

22        THE COURT:  Are there any questions about the

23   sentencing guidelines?

24        THE DEFENDANT:  No, ma'am.

01:32:00   25        THE COURT:  Based upon what's known at this point

1  then, the anticipated offense level will be 38, and with the

2  criminal, assuming your criminal history category is I, the

3  sentencing guideline range would be 235 to 293 months

4  imprisonment, which would be constrained by the 156-month

01:32:30   5  combined statutory maximum of Counts 2 and 3, and that would be

6  in addition to supervised release and any fine and restitution

7  the Court may impose.

8  Do you understand that, sir?

9  THE DEFENDANT: I do, ma'am.

01:32:41  10  THE COURT: Are there any questions?

11  THE DEFENDANT: No, ma'am.

12  THE COURT: Do you understand that these calculations

13  are preliminary in nature; ultimately the probation department

14  will make a determination, and then ultimately the Court will

01:32:53  15  make its final decision?

16  THE DEFENDANT: Yes, ma'am.

17  THE COURT: Sir, has anybody threatened you in any way

18  to cause you to plead guilty?

19  THE DEFENDANT: No, ma'am.

01:33:05  20  THE COURT: Has anybody forced you to cause you to

21  plead guilty?

22  THE DEFENDANT: No, ma'am.

23  THE COURT: Apart from this plea agreement, have there

24  been any promises made to you or any threats or coercion made

01:33:16  25  to you by anyone, the US Attorney or anybody else, to cause you

1   or to induce you to plead guilty?

2           THE DEFENDANT:  No, ma'am.

3           THE COURT:  Is your decision to plead guilty entirely

4   voluntary?

01:33:26   5           THE DEFENDANT:  It is, ma'am.

6           THE COURT:  You do understand, sir, that the final

7   decision as to what your sentence will be rests with this Court

8   once I've considered the sentencing guidelines and the plea

9   agreement and the calculations that we have talked about?

01:33:40   10           THE DEFENDANT:  I do, ma'am.

11           THE COURT:  All right, sir.  We are almost finished.

12           What I need you to do at this point is just very

13   briefly in your own words if you can just relate what precisely

14   it is that you did that resulted in these charges.

01:33:54   15           THE DEFENDANT:  Okay, ma'am.  First and foremost, I

16   say today that I appear before you and accept with full

17   responsibility my actions which have brought me here today.

18           What I did was, continued a conversation that I had.

19   I did not initiate it, but unfortunately I continued it.  I was

01:34:16   20   under a great duress.  I was afraid the individual that was

21   involved with the conversation with me was going to cooperate

22   because he was being pressured by the federal government and

23   the state's attorney, and I continued, for lack of a better

24   word, the charade that I tried to use to persuade him to not

01:34:41   25   hurt, to not cooperate against me.

1    But those actions that I took were wrong, in

2 furtherance by giving him a picture, by letting him know that

3 we could look for somebody, a hit man to do this. It was not

4 my intent to kill anybody, but I put myself in a bad situation.

01:35:08   5 I don't think I would have did it if I was thinking clearly.

6 It was totally out of character for me. I'm not a violent

7 person. I have no violence in my background. And like I said,

8 I just think that it was a big mistake on my part, and although

9 it was a mistake, it was unlawful, and I accept responsibility

01:35:28  10 for that.

11    THE COURT: All right. Well, you haven't really given

12 me a lot of facts. What I'm going to do, I'm going to ask the

13 government to summarize for me what its evidence would be with

14 respect to these counts. And I want to you listen very

01:35:41  15 carefully, because I am then going to ask you what if anything

16 you agree with and what if anything you disagree with.

17    THE DEFENDANT: Okay, ma'am.

18    THE COURT: All right. Counsel would you please

19 summarize what your evidence would be.

01:35:49  20    MR. NETOLS: Yes, Judge. If we were to go to trial in

21 this case, our evidence largely would be in the form of tape

22 recorded conversations.

23    It would be that Mr. Finnigan had a conversation with

24 someone who is identified in the plea agreement as Chicago

01:36:05  25 police officer 1. That's actually co-defendant Herrera. And

1   during the course of that conversation, they continued a

2   discussion, as Mr. Finnigan indicated, that they had concerning

3   the possibility of hiring someone to kill another police

4   officer, Mr. Brazynski, that's Chicago police officer 2, who

01:36:26   5   they thought was cooperating against them in the state

6   investigation, the state case.

7          And during this meeting, the first meeting, Finnigan

8   indicated that he was not successful in trying to, in finding

9   somebody to kill police officer 2, and he suggested that Mr.

01:36:46   10   Herrera try to find someone to kill police officer 2.  Again,

11   Mr. Finnigan didn't know that Mr. Herrera was cooperating with

12   the government in recording the conversation.

13          A few days later on the 21st there was a telephone

14   conversation at about 5:48 in which Mr. Finnigan talked to Mr.

01:37:06   15   Herrera and they agreed to meet again.  During that meeting Mr.

16   Herrera indicated that he had found someone to kill the other

17   police officer, and what he needed from Mr. Finnigan was a

18   photograph of that other police officer in civilian clothes.

19   They did not want to give the photograph to the killer,

01:37:23   20   according to the undercover ruse, they wouldn't want the killer

21   to know that the person he was going to kill was a police

22   officer, they didn't want to use a paragraph of the person in

23   their police uniform.

24          And so Mr. Finnigan had a photograph of Officer

01:37:46   25   Brazynski in civilian clothes, and in that recorded

1    conversation Mr. Finnigan gave that photograph to Mr. Herrera,

2    told him to be careful handling it, to wipe any prints off, and

3    it was clear in the course of that conversation that -- or in

4    that, at that time that, based on what was said to Mr. Herrera,

01:38:08    5    that Mr. Finnigan believed that Mr. Herrera's intent was to

6    give that picture to somebody who was going to use that picture

7    to identify the police officer and kill him.

8         And, further, Mr. Finnigan agreed to provide an

9    address, a new address for the targeted police officer.

01:38:25    10        Later that same day in another conversation at 6:28

11   they agreed to meet briefly, at which point Mr. Finnigan was

12   supposed to give the address of the other police officer to Mr.

13   Herrera.  That meeting never came to fruition because the

14   police officers, Mr. Herrera and Mr. Finnigan, correctly

01:38:47    15   surmised that they actually were being surveilled by federal

16   agents.

17        And so the basis of the count of conviction of, for

18   Count 2 is Mr. Finnigan's use of the telephone to set up that

19   second meeting where he was supposed to give the address of

01:39:03    20   police officer 2 after he had given the photograph to Mr.

21   Herrera and Mr. Herrera told him he was going to give that

22   photograph to someone to identify the person who was to be

23   killed.

24        With respect to the other count, a tax offense, the

01:39:19    25   evidence would show, based on the money that Mr. Finnigan took

1    during the tax year 2005, that he filed a tax return on behalf

2    of himself and his wife in which the amount of income was

3    declared to be approximately -- let me make sure I'm using --

4    I'm looking at the wrong tax year.  There's two tax years,

01:39:48    5    there's a charged tax year and there's a relevant conduct tax

6    year.

7         The charged tax year is 2004, and the tax return Mr.

8    Finnigan filed under penalty of perjury was that his income was

9    $46,000 approximately.  The reality is his income was about

01:40:06    10    $230,000 and the $174,000 that was not on the return was income

11    that he had obtained through taking money from arrestees during

12    that tax year.

13         THE COURT:  All right.  So you've heard the statement

14    of the assistant U.S. attorney.  Is it correct?

01:40:24    15         THE DEFENDANT:  It is, ma'am.

16         THE COURT:  Do you disagree with any part of the

17    statement?

18         THE DEFENDANT:  I do not.

19         THE COURT:  How do you plead to Count 2?

01:40:31    20         THE DEFENDANT:  Guilty, ma'am.

21         THE COURT:  And how do you plead to Count 3?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  Mr. Finnigan, since you do acknowledge

24    that you are in fact guilty as charged in Counts 2 and 3, you

01:40:40    25    have freely waived indictment and you've had the assistance of

1    counsel, you understand what your trial rights are, you

2    understand what the maximum possible punishment is, you're

3    voluntarily waiving indictment and pleading guilty, I will

4    accept your waiver of indictment, I will accept your guilty

01:40:54   5    pleas.  I'll enter a judgment of guilty on the pleas on Counts

6    2 and 3 of the information.

7         I'm going to order a presentence discretion.  A

8    probation officer will visit you and will conduct an interview

9    with you, ultimately will prepare a presentence investigation

01:41:10   10   report.  Before it is submitted to the Court, you and your

11   attorney and the government will have an opportunity to review

12   it for factual accuracy.

13        And we'll set this matter for sentencing.

14        THE CLERK:  August 11.

01:41:25   15   THE COURT:  How is August 11, gentlemen?  How is that?

16        MR. BARNETT:  That's fine.

17        THE COURT:  That will be at 11:30.

18        MR. NETOLS:  I think that's good, Judge.

19        THE COURT:  Okay.

01:41:35   20   Anything else to address right now?

21        MR. NETOLS:  Same bond to stand?

22        THE COURT:  Same bond to stand.

23        MR. NETOLS:  Which is actually --

24        THE COURT:  Which is no bond.

01:41:45   25   MR. NETOLS:  Yes.

1      THE COURT:  Right.

2      MR. NETOLS:  That's all.

3      MR. BARNETT:  Thank you.

4      THE COURT:  I'll see you back here in August.

01:41:52  5      THE DEFENDANT:  Thank you, Your Honor.

6    (Proceedings concluded.)

7             C E R T I F I C A T E

8      I, Michael P. Snyder, do hereby certify that the

9  foregoing is a complete, true, and accurate transcript of the

10  proceedings had in the above-entitled case before the Honorable

11  BLANCHE M. MANNING, one of the judges of said Court, at

12  Chicago, Illinois, on April 26, 2011.

13

14                */s/ Michael P. Snyder*

15                Official Court Reporter

16                United States District Court

17                Northern District of Illinois

18                Eastern Division

19

20

21

22

23

24

25